UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VLADIMIR ESKIN**<br>7313 Barra Drive<br>Bethesda, MD 20817,<br><br>    Plaintiff,<br><br>  v.<br><br>**AFRICAN DEVELOPMENT BANK**<br>Rue Joseph Anoma<br>BP 1387<br>Abidjan 01, Côte d'Ivoire,<br><br>    Defendant. | Civil Action No. _____ |

## COMPLAINT
**(for breach of contract and related claims)**

1. This is a case alleging breach of a contract to supply database management, hosting, and related services to an international financial institution, or in the alternative, for *quantum meruit*. It is brought by the assignee of a company that performed nearly $800,000 worth of services for which it was repeatedly promised payment that it has never received.

### Jurisdiction and Venue

2. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1330 and the International Organizations Immunities Act, 28 U.S.C. § 288a(b) (which provides that international organizations "shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments"). Defendant is not entitled to immunity from suit (as is more fully explained below) by virtue of 28 U.S.C. § 1605(a)(2).

3. Venue is proper in the United States District Court of the District of Columbia pursuant to 28 U.S.C. § 1391(f)(4).

1

Parties

4. Plaintiff Vladimir Eskin is a natural person, a citizen of the United States, and a resident of the State of Maryland. Mr. Eskin is a former shareholder in Knoema Corporation ("Knoema"), the provider of the services at issue in this Complaint. Plaintiff and other shareholders sold their interests in Knoema in December 2020. As part of that transaction, Plaintiff was assigned certain Knoema receivables, including those referenced herein, in his capacity as sellers' representative. A true copy of the document recording that assignment is attached hereto as Exhibit 1.[1]

5. Defendant African Development Bank ("the AfDB" or "the Bank") is an international development institution, with headquarters in Abidjan, Cote d'Ivoire. Its members include all of the independent states on the African continent, as well as certain "non-regional" countries, including the United States. The AfDB was designated an "international organization" within the meaning of the International Organizations Immunities Act by Executive Order No. 11334, on March 7, 1967.

Facts

6. Knoema is a corporation incorporated and existing under the laws of the State of Delaware. Its principal business is in the area of information technology, as a supplier of computer infrastructure, applications, databases, and support services. Knoema began providing services to the AfDB, pursuant to a series of contracts, in 2015. The upshot of these contracts was for Knoema to create for the Bank an "African Information Highway Initiative" (AIH"), to provide a "one-stop" data center through various data applications. The AIDB's goal was to increase public access to official and other statistics across Africa, while at the same time providing support to individual African countries to improve their own data quality, management, and dissemination. The AIH concept was developed by the Statistics Department of the Bank.

---

[1] The assignment documentation has been supplied to members of the General Counsel's Office of the Bank, and Defendant is well aware of it.

7. Although the contracts between Knoema and the Bank called for periodic payments based on delivery, the Bank failed to make those payments throughout 2015, 2016, and 2017. Only after threats of litigation or arbitration were communicated to the Bank did Defendant remit the sums then due, an aggregate of just under $2.5 million, pursuant to a settlement agreement signed in February 2018.

8. The settlement agreement called for Knoema to deliver to the Bank the data platform "opendataforafrica.org," its then-existing content of country-specific databases, and the related software applications. This was intended to permit the Bank to host the AIH and all of its sub-parts, using the Bank's infrastructure.

9. While Knoema provided all of the necessary instructions, software files, and training of the Bank's staff on hosting the AIH, the Bank, however, never completed the takeover of this responsibility. As a result, the Bank continued to rely on Knoema to provide these services until it was ready to support the operations. This did not happen until May 2021, and the website and software were, according to Plaintiff's information and belief, transferred to the Bank at that time.

10. From January 2018 through November 2020, therefore, Knoema continued to provide data hosting and software support and maintenance for the approximately 200 data portals that it had built for the Bank pursuant to the 2015 contract, covering all 54 African countries and many regional institutions. This work also included software updates, operational maintenance, monthly data updates for all portals, and addressing regular users' questions and issues regarding features of the data and portals. The agreed price for these services was $249,500 per year, or $20,792 per month.

11. The provision of the contracted services was a commercial activity performed principally in the United States, within the meaning of 28 U.S.C. § 1605(a)(2), part of the Foreign Sovereign Immunities Act. Moreover, all invoices rendered to the Bank directed that payment be made by wire transfer to accounts in the United States, and the Bank's failure to pay those invoices caused

a direct effect in this country. Defendant is therefore not immune from legal action relating to its commercial activity.

12. Beginning in early 2018, Knoema regularly requested payment from the Bank for its services, which were provided in a manner completely compliant with the parties' contractual arrangement. Yet the Bank failed to make any of those payments, over the entire 35 months.

13. Beginning in June 2019, Knoema was told that there were various problems concerning internal Bank bureaucracy that were preventing payment. Documentation, Knoema was repeatedly assured, was being prepared to fix these issues, and the company's forbearance was both requested and gratefully acknowledged. The Bank regularly sought additional services from Knoema, demonstrating its complete satisfaction with the quality and responsiveness of its performance. Throughout this period, there was never any suggestion from the Bank that Knoema's invoices were unauthorized, excessive, or irregular in any way.

14. To the contrary: the Bank repeatedly apologized for the internal difficulties that were holding up payment, and assured Knoema that they were being addressed and were on the cusp of resolution. In August 2019, for example, Louis Kouakou, Manager of the Economic and Social Statistics Department (and the individual Bank officer with whom Knoema was in most regular contact), told Knoema that there were staff on vacation in the Finance Department, but that he "hope[d] to resolve the issue by September 2019." He tendered "[m]any thanks for your understanding." Yet the issue was not "resolved" by September 2019, or at any later time.

15. Nevertheless, when in April 2020 Mr. Kouakou requested help with "an urgent task from senior management to start providing health data around the COVID-19 situation to help inform strategies and decisions in African countries," Knoema responded immediately, and performed that task to the Bank's evident satisfaction. The bill for this work too, however, remains unpaid.

16. In July 2020, after various correspondence between Knoema and the AfDB, the company sent the overdue invoices again, and offered the Bank a discount if they were paid promptly. It took six weeks for Mr. Kouakou to respond at all, but when he did, he wrote, "We are very sorry for the delay. Holidays of staff in July and August did not help us to move very fast on that issue. We made provisions for the payment and we shall finalize the payment process in September." Yet "the payment process" was not "finalized" by September 2020, or at any later time.

17. To recap: in 2019, the invoices could not be paid because of internal documentation requirements that had to be satisfied. In 2020, they could not be paid because people were on holiday. Meanwhile, Knoema continued to perform work for the Bank, and the Bank continued not honoring Knoema's invoices.

18. In late October 2020, Mr. Kouakou wrote, "I am pleased to inform you that we got the final approval. We shall process the payment now." Presumably, the key personnel were back from vacation. But the payment was not "processed" in October 2020, or at any later time.

19. On November 17, 2020, Mr. Kouakou wrote to Knoema, "We met some administrative problems in terms of procedure. We were obliged to resubmit the file. It's almost at the last stage now. We are confident that we will finalize it as soon as possible." Yet the payment was not finalized "as soon as possible," nor has it been as of the date of this filing.

20. On December 10, 2020, Mr. Kouakou reported:

> we have encountered problems internally with the last level of payment. There was an error in the budget line to be used for the payment. Knoema's payments should be made with a special account only. This special account can only be funded in the first quarter of 2021. My apologies but I give you the assurance that we will pay the current bills plus those of 2020. We still ask for a little more patience.

Yet despite the Bank's "assurance" and the continuation of Knoema's "patience," "the current bills plus those of 2020" were not, and have still not been, paid.

21. Knoema then revoked the unilateral offer of a reduction that it had made in the hope of receiving its long-overdue payments in 2020. But still nothing happened. In early January 2021, Mr. Kouakou on behalf of the Bank was back to citing vacations, as well as the lack of internally-generated paperwork, as the reasons for non-payment:

> The request for payment also coincided with holiday periods and the entire Bank was on leave for one week. Last I heard, we need to have a contract between Knoema and the Bank before the invoices are paid. We want to avoid any payment problems this time, so we will organize this week a meeting between the relevant departments of the Bank to agree on the right way to solve this problem and contact you afterwards.

22. The promised "contact" was never made. After three increasingly urgent requests for an update, on January 26, 2021, Mr. Kouakou informed Knoema that there was, essentially, still no progress. Subsequent correspondence from Knoema was met with total silence.

23. The unpaid invoices, for services requested by the Bank, received by it, and used to its benefit, amount to $249,500 for 2018, $249,500 for 2019, and the prorated amount of $228,708 for 11 months of 2020, plus $65,000 for the construction of the COVID-19 Portal, for a total of $792,708.

24. In none of the discussions between representatives of the Parties, between December 1, 2020, and the date of filing of this Action, has the Bank denied that it is obligated to liquidate the outstanding invoices, nor has it contested the amounts that were billed and remain unpaid.

## Count One:
## Breach of Express Contracts

25. Plaintiff respectfully reiterates and incorporates herein by reference ¶¶ 1-24, *supra*.

26. There was an express contract in existence between Knoema and the AfDB during the entire period at issue herein, which is to say January 2018 through November 2020, by which Knoema would provide certain maintenance and hosting services to the Bank and the Bank would compensate Knoema at the rate of $249,500 annually. There was also an express contract between

Knoema and the Bank by which Knoema undertook to construct the COVID-19 Portal for an agreed charge of $65,000.

27. Knoema at all relevant times provided the services as agreed. At no time did, or could, the Bank express any dissatisfaction with the quality, quantity, or responsiveness of the services in question, and it accepted the value of those services in accordance with the agreement. The invoices sent by Knoema for its work were precisely in line with the agreed price.

28. Nevertheless, and despite numerous acknowledgments by the Bank of its debt, and many express and specific promises to pay it, the Bank has failed to remit payment for any of the maintenance services supplied by Knoema from January 2018 through November 2020.

29. Moreover, when the Bank specifically requested that Knoema provide support in an effort to address the COVID-19 information gap on an urgent basis, Knoema immediately responded, and supplied the requested materials within two weeks, but like the other invoices, the bill for this effort has been ignored.

30. Pursuant to the terms of its contractual agreements with Knoema, Defendant is now indebted to Knoema – and therefore, according to the terms of the assignment referenced in ¶ 4, *supra*, and Exhibit 1 hereto, to Plaintiff Eskin – in the aggregate amount of $792,708.

## Count Two: Breach of Implied Contract (*Quantum Meruit*)

31. Plaintiff respectfully reiterates and incorporates herein by reference ¶¶ 1-24, *supra*.

32. Even if the Court were to hold that there was no express contract between Defendant and Knoema as alleged in Count One, there was a contract implied-in-fact.

33. By providing the maintenance and hosting work described in ¶¶ 8-10, *supra*, Knoema rendered valuable services for the Bank, which services were accepted in the Bank's full knowledge – and indeed with its open and repeated acknowledgment – that Knoema expected and was entitled to be paid the stipulated amount of $249,500 annually for them. And by providing the COVID-related

7

work described in ¶ 15, *supra*, Knoema again rendered valuable services for Defendant, which services were accepted by the Bank, which knew, and regularly acknowledged, that Knoema was to be paid the stipulated amount of $65,000 for them.

34. Irrefutable evidence of the Bank's understanding that Knoema expected to be paid, and indeed of its agreement to pay accordingly, may be found in the correspondence referenced in ¶¶ 13-22, *supra*, copies of which have been retained by both Parties hereto.

35. By failing to honor Knoema's invoices, Defendant was and remains in breach of the implied-in-fact contract according to which Knoema was to provide services and the Bank was to pay for that work.

36. Pursuant to the terms of agreements between Knoema and Defendant AfDB, Defendant is now indebted to Knoema – and therefore, according to the terms of the assignment referenced in ¶ 4, *supra*, and Exhibit 1 hereto, to Plaintiff Eskin – in the aggregate amount of $792,708.

### Count Three:
### Unjust Enrichment

37. Plaintiff respectfully reiterates and incorporates herein by reference ¶¶ 1-24, *supra*.

38. Even if the Court were to hold that there was no express or implied contract between the Bank and Knoema as alleged in Counts One and Two, permitting Defendant to retain the benefits provided by Knoema without compensation would be unjust and inequitable.

39. It was at all relevant times made clear to the Bank by Knoema that Knoema was not acting as a volunteer: it expected compensation at the agreed rate for the maintenance and hosting services that Knoema continued to provide from January 2018 through November 2020, as well as for the COVID-related services requested by the Bank and performed by Knoema in April 2020.

40. The Bank has benefited by the services provided by Knoema, and continues to benefit from them to this day. Unless Plaintiff as Knoema's assignee is compensated for those benefits, their retention is unjust, and substantiates this cause of action.

41. Irrefutable evidence of this injustice may be found in the correspondence referenced in ¶¶ 13-22, *supra*, in which the Bank acknowledged its obligation to pay for the services provided by Knoema in accordance with the invoices delivered to it, offering excuses for delays in payment, but not disputing that the sums claimed had been earned and were (over)due.

42. Without the intervention of this Court, therefore, the Bank will have been unjustly enriched, at the expense of Knoema's assignee, in the aggregate amount of $792,708.

### **Prayer for Relief**

WHEREFORE, and for all of the foregoing reasons, Plaintiff Vladimir Eskin, assignee of Knoema Corporation, respectfully prays that this Honorable Court:

a. ACCEPT jurisdiction over the subject matter of this Action, and personal jurisdiction over Defendant, denying any claim of immunity that may be asserted;

b. DECLARE that Defendant is in breach of its express contract with Knoema, awarding to Plaintiff Eskin contract damages in the amount of $792,708;

c. In the alternative, DECLARE that Defendant is in breach of its implied-in-fact contract with Knoema, awarding to Plaintiff Eskin contract damages in the amount of $792,708;

d. In the further alternative, DECLARE that permitting Defendant to retain the value of the services provided to it by Knoema would be unjust and inequitable, awarding to Plaintiff Eskin restitution in the amount of $792,708;

e. AWARD to Plaintiff pre-judgment interest, as from the due date of each of the unpaid invoices delivered by Knoema to the Bank;

f. AWARD to Plaintiff the costs of this litigation, including reasonable attorneys' fees; and

g. GRANT such additional relief as to the Court shall appear just and equitable.

Respectfully submitted,

*Steven M. Schneebaum*

_____
Steven M. Schneebaum, D.C. Bar No. 956250
Cynthia L. McCann, D.C. Bar No. 1046263
STEVEN M. SCHNEEBAUM, P.C.
1776 K Street, N.W., Suite #800
Washington, D.C. 20006
    Tel.: (202) 742-5900
    Email: sms@smslawdc.com

Counsel for Plaintiff Vladimir Eskin,
    as Assignee of Knoema Corporation

Dated:  March 25, 2022